## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC WATERMAN, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : COMPLAINT FOR VIOLATION OF THE |
| NEOGEN CORP., JAMES C. BOREL, | : SECURITIES EXCHANGE ACT OF 1934 |
| WILLIAM T. BOEHM, RONALD D. | : |
| GREEN, RALPH A. RODRIGUEZ, JAMES | : |
| P. TOBIN, DARCI L. VETTER, and | : |
| CATHERINE E. WOTEKI, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1. On December 13, 2021, Neogen Corp. ("Neogen" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") to acquire 3M Company ("3M"), Garden SpinCo Corporation ("SpinCo"), and Nova RMT Sub, Inc. ("Merger Sub") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, 3M's stockholders will receive shares of Neogen for each share of 3M common stock they own.

3. On March 18, 2022, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 15 U.S.C. § 78aa because the Proxy, which plaintiff alleges to be materially false and misleading, was transmitted by defendants into this District, including to plaintiff, who resides in this District. *See, e.g., Wojtunik v. Kealy*, 2003 WL 22006240, at *5-6 (E.D. Pa. Aug. 26, 2003).

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of Neogen common stock. Plaintiff resides in this District.

9. Defendant Neogen is a Michigan corporation. Neogen's common stock is traded on the NASDAQ under the ticker symbol "NEOG."

10. Defendant James C. Borel is Chairman of the Board of Directors of Neogen (the "Board").

11. Defendant William T. Boehm is a member of the Board.

12. Defendant Ronald D. Green is a member of the Board.

13. Defendant Ralph A. Rodriguez is a member of the Board.

14. Defendant James P. Tobin is a member of the Board.

15. Defendant Darci L. Vetter is a member of the Board.

16. Defendant Catherine E. Woteki is a member of the Board.

17. Defendants identified in ¶¶ 10-16 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

18. Neogen develops and markets comprehensive solutions dedicated to food and animal safety.

19. On December 13, 2021, Neogen entered into the Merger Agreement.

20. The press release announcing the Proposed Merger provides as follows:

NEOGEN Corporation (NASDAQ: NEOG) and 3M (NYSE: MMM) announced today that they have entered into a definitive agreement pursuant to which 3M will separate its Food Safety business and simultaneously combine it with NEOGEN in a transaction that is intended to be tax-efficient to 3M and its shareholders for U.S. federal income tax purposes. The combination will create an innovative leader in the food safety sector with a comprehensive product range and a strategic focus on the category's long-term growth opportunities.

The transaction implies an enterprise value for 3M's Food Safety business of approximately $5.3 billion, including $1 billion in new debt to be incurred by 3M's Food Safety business. This represents an implied multiple of approximately 32x and 27x CY 2022E Adjusted EBITDA pre and post run-rate synergies respectively, based on NEOGEN's closing price as of December 13, 2021. 3M's Food Safety business will fund to 3M consideration valued at approximately $1 billion, subject to closing and other adjustments. The combined company is expected to have an enterprise value of approximately $9.3 billion, based on NEOGEN's closing share price as of December 13, 2021. Under the terms of the definitive agreements, which involve a tax-free "Reverse Morris Trust" structure, existing NEOGEN shareholders will continue to own approximately 49.9% of the combined company, and 3M shareholders will receive approximately 50.1% of the combined company. The Boards of Directors of both NEOGEN and 3M have unanimously approved the transaction.

"This combination will enhance NEOGEN's position in this new era of food security, equipping us with an expanded product line that enables us to capitalize on our growing footprint, reaching more customers, more often, while continuing our track record of strong and consistent growth," said John Adent, NEOGEN's President and Chief Executive Officer. "The heightened global focus on food security, sustainability and supply chain solutions around the world presents

exciting opportunities for NEOGEN to be positioned as an innovative leader at the forefront of the growth and digitization of the industry. We're excited to welcome 3M's Food Safety employees to the NEOGEN team, and we're looking forward to demonstrating the immense benefits of this combination to our customers, employees and shareholders."

"NEOGEN and 3M share a deep commitment to quality, innovation and customer satisfaction and long histories of industry leadership. By combining our Food Safety business with NEOGEN, we will create an organization well positioned to capture long-term profitable growth. This transaction further evolves our strategy, focuses our health care business and benefits our stakeholders, as we actively manage our portfolio to drive growth and deliver shareholder value," said Mike Roman, 3M Chairman and Chief Executive Officer.

**An Innovative Global Leader in Food Safety: Key Strategic Benefits**

The combination is expected to generate significant long-term value for shareholders of the combined company, as well as customers and employees by:

**Creating a leading innovator in an industry benefiting from growing demand:** NEOGEN's pure play food security business, combined with the long-term tailwinds of increased global focus on sustainability, food safety and supply chain solutions, mean NEOGEN is the ideal home for 3M's Food Safety business. A combination will create a global innovator in food safety with the geographic footprint, product range and innovation capabilities to further capitalize on attractive and enduring growth trends.

**Expanding food safety product offerings to better serve customers:** The company will have a significantly expanded product offering in food safety, particularly in indicator testing and pathogen detection areas, which complement NEOGEN's existing microbiology lines. NEOGEN will also be able to offer 3M food safety customers its genomics services, which deliver innovative DNA testing – a new offering to 3M food safety customers. This expanded product range, along with NEOGEN's complementary animal safety business, increases the solutions with which NEOGEN helps customers protect the world's food supply from the farm gate to the dinner plate.

**Generating global growth opportunities:** The combined company creates an opportunity to optimize NEOGEN and 3M Food Safety's high-growth capabilities to add value for customers through a compelling product offering. Beyond the U.S. and Europe, heightened interest in developing nations in improving food safety presents significant growth potential for the combined company. The combination will also provide investment flexibility to pursue international expansion.

**Creating a compelling offering through enhanced R&D capabilities, innovation and analytics:** NEOGEN is looking to the future of the industry, and with 3M's Food Safety business, will possess the breadth and digital

4

capabilities to lead the digitization of the food security industry. The complementary product offerings combined with NEOGEN's data-driven analytics approach will create a compelling solution as customers seek innovative partners to increase efficiency and enhance food safety protocols.

**Enhancing revenue, margin and earnings stability:** The combined company is expected to have an improved financial profile, which is expected to further enhance NEOGEN's already consistently high-performing revenue stream with improved EBITDA margins by increasing exposure to highly profitable food safety categories and providing substantial run-rate growth and cost synergies of approximately $30 million in EBITDA contribution. These synergies are expected to be achieved by the end of year three following the close of transaction through efficiencies in product innovation, sales, marketing, distribution and production. The combination will boost NEOGEN's food safety segment to approximately 70% of total revenue post-transaction, with total projected pro forma revenues of approximately $1 billion expected in the first full year post closing. Pro forma EBITDA is expected to be approximately $300 million with a higher overall EBITDA margin profile of approximately 30% expected in the first full year post closing.

### Transaction Details

The transaction involves a tax-free "Reverse Morris Trust" transaction structure, where 3M's Food Safety business will be spun-off or split-off to 3M shareholders and simultaneously merged with a wholly owned subsidiary of NEOGEN. The transaction is intended to be tax-efficient to 3M and 3M's shareholders for U.S. federal income tax purposes. At the completion of the transaction, NEOGEN will issue a number of shares to 3M shareholders such that 3M shareholders will receive approximately 50.1% of the combined company and existing NEOGEN shareholders will continue to own approximately 49.9% of the combined company. In connection with the transaction, 3M will also receive consideration valued at approximately $1 billion, subject to closing and other adjustments.

NEOGEN's expected pro forma net leverage ratio at close is expected to be less than 2.5x, inclusive of the $1 billion of new debt. Strong expected free cash flow generation and EBITDA growth of the combined business enables rapid deleveraging post-closing.

The transaction is expected to close by the end of Q3 2022, subject to approval by NEOGEN shareholders, receipt of required regulatory approvals and the satisfaction of other customary closing conditions.

### Leadership and Governance

NEOGEN's President and Chief Executive Officer, John Adent, and NEOGEN's existing management team will continue to lead the combined company.

The size of the NEOGEN board will be increased and two new independent board members, to be designated by 3M, will be appointed at closing.

**Advisors**

Centerview Partners LLC is serving as exclusive financial advisor and Weil, Gotshal & Manges LLP is serving as legal counsel to NEOGEN.

Goldman Sachs & Co. LLC is serving as exclusive financial advisor and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to 3M. Goldman Sachs Bank USA and JP Morgan Securities are providing committed financing for the transaction.

21.     On March 18, 2022, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

### Financial Projections

22.     The Proxy fails to disclose material information regarding Neogen's and 3M's financial projections, specifically: the line items underlying the financial projections.

23.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

### Financial Analyses

24.     The Proxy fails to disclose material information regarding the financial analyses conducted by Centerview Partners LLC ("Centerview"). When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion and the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

25.     Regarding Centerview's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the inputs and assumptions underlying the discount rates and multiples utilized by

Centerview; (ii) the terminal values utilized by Centerview; and (iii) the net debt utilized by Centerview.

Banker Engagement

26. The Proxy fails to disclose the timing and details of the prior services Centerview conducted for Neogen and its affiliates.

**COUNT I**

**Claim Against the Individual Defendants and Neogen for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

27. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

28. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

29. Neogen is liable as the issuer of these statements.

30. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

31. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

32. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

33. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

34. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

35. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

36. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

37. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

38. The Individual Defendants acted as controlling persons of Neogen within the meaning of Section 20(a) of the Exchange Act as alleged herein.

39. Due to their positions as officers and/or directors of Neogen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

41. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to

control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

42. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

43. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

44. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

45. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

46. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: April 1, 2022

**GRABAR LAW OFFICE**

By: *[signature]*
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*